**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RANDY HOLLAND,

        Petitioner,              Case Number: 2:07-CV-11219

v.                                         HON. MARIANNE O. BATTANI

PERCY CONERLY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Randy Holland has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Pine River Correctional Facility in St. Louis, Michigan, challenges his 2002 conviction for third-degree criminal sexual conduct. For the reasons set forth below, the Court denies the petition.

**I.**

Petitioner's conviction arises from the assault of Bridget Whatley on May 5, 1999. The prosecution's theory was that Petitioner befriended Bridget, a mentally impaired young woman, when he was a customer at her mother's pet store, and then sexually assaulted her after gaining her mother's trust. Bridget's mother, Evonne Whatley, testified that her daughter was 26 years old, educable mentally impaired and had the maturity of a 14 year old. Bridget graduated high school through a special education program, and worked part time at her mother's pet shop. Whatley became acquainted with Petitioner as a customer at her pet shop one or two years before the assault.

Whatley testified that on May 5, 1999, Petitioner picked up Bridget so that the two could

go to Petitioner's house for dinner. Whatley believed that Petitioner's children would also be at the house. Bridget left at 6:30 p.m. and returned at 9:30 p.m. When she returned home, Bridget proceeded straight to her room without stopping to talk to Whatley. The next morning, Bridget was upset and crying and told Whatley Petitioner assaulted her. Whatley called the police and took Bridget immediately to the hospital.

Bridget Whatley testified that she was twenty-six-years old. She met Petitioner at her mother's pet store. On May 5, 1999, he picked her up at her home and told her they would go to his house so she could meet his children and then go out to dinner. But, when they got to his house, his children were not there. Petitioner brought her into his bedroom. He began touching her and ignored her repeated requests that he stop. He then had intercourse with her. Afterwards, he took her out to dinner and told her not to tell her mother what they had done. The next morning, after telling her mother what had happened, she was taken to the hospital.

Dr. Steven Pearl testified that he examined Bridget at the hospital. Bridget was upset and crying. He was unable to complete an internal examination because Bridget could not relax. He did not observe any external trauma or bleeding.

Nurse Gail Brush testified that she also treated Bridget at the hospital and completed a rape kit. Bridget was very upset and told Brush that Petitioner had intercourse with her against her will.

Melinda Jackson, a forensic specialist with the Michigan State Police Crime Lab, testified that the evidence obtained from the rape kit contained a head hair that did not match that of Bridget, her family or Petitioner. Jackson testified that this was not unusual as people lost approximately one hundred head hairs a day and that those hairs are deposited on various objects

as people go about their daily business.

Petitioner did not testify in his own defense.

## II.

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of third-degree criminal sexual conduct. On April 9, 2002, he was sentenced as a fourth habitual offender to six to forty years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claim:

> The prosecutor violated appellant's due process rights by arguing facts not in evidence concerning the source of a foreign head hair found in the complainant's pubic hair.

The Michigan Court of Appeals affirmed his conviction. *People v. Holland*, No. 242170 (Mich. Ct. App. Jan. 27, 2004).

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same claim raised in the Michigan Court of Appeals and the following additional claim:

> The court gave an improper jury instruction which allowed them to consider whether the complainant was mentally incapacitated or incapable . . . . this was unsupported by evidence. Also, defense moved for directed verdict which should have been granted . . . .

The Michigan Supreme Court denied leave to appeal. *People v. Holland*, No. 125777 (Mich. July 29, 2004).

On March 23, 2004, Petitioner filed a pro se motion for relief from judgment in the Oakland County Circuit Court. In the motion for relief from judgment, Petitioner raised the following claims: (i) insufficient evidence was presented to establish the elements of third-degree criminal sexual conduct; (ii) there was no scientific support for the expert testimony; and

3

(iii) the conviction was based on an unreasonable application of state and federal law. The trial court denied the motion for relief from judgment. *People v. Holland*, No. 99-168368-FH (Oakland County Circuit Court Jan. 25, 2005).

Petitioner filed an application for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals. He raised the following claims:

> I.   Was appellant denied due process of law as the prosecution failed to meet its burden to establish sufficient evidence on the essential elements of the charged offense of third-degree criminal sexual conduct?
>
> II.  Was there no scientific support in the record for the proposition that the experts techniques for evaluating the validity of penetration provide any superior results to those of an informed jury, and as such undermined and violated the appellant's adversarial process?
>
> III. Was appellants's conviction [based] on an unreasonable application of state and federal law to convict under a freestanding claim of innocence and entitles appellant to reversal of his conviction?
>
> IV.  Appellant was denied the effective assistance of appellate counsel where counsel did not raise certain significant and obvious issues in appellant's direct appeal by right.

The Michigan Court of Appeals denied leave to appeal. *People v. Holland*, No. 262267 (Mich. Ct. App. Jan. 23, 2006).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Holland*, No. 130536 (Mich. May 30, 2006).

Now pending before this Court is Petitioner's petition for a writ of habeas corpus. Petitioner raises the following claims in his petition:

> I.   Appellant was denied effective assistance of appellate counsel where counsel failed to raise significant and obvious issues in Appeal of Right.

II. Prosecution failed to meet its burden of proof to establish sufficient evidence on the elements of 3rd Degree CSC.

III. No scientific support that the experts' techniques for evaluating the validity of penetration provided any superior results of an informed jury.

IV. Defendant's conviction rests on an unreasonable application of State and Federal Law to convict under a freestanding claim of actual innocence.

V. Petitioner was falsely convicted on hearsay evidence on alleged testimony from the accuser.

VI. Prosecutor violated Petitioner's Due Process Rights by arguing facts not in evidence concerning the source of a foreign head hair found in the complainant's pubic hair.

VII. The Court gave improper jury instructions which allowed the them to consider whether the complainant was mentally incapacitated or incapable.

VIII. Court made a judicial error in sentencing.

IX. Defendant was on tether for three (3) years while awaiting trial.

X. Prosecutor never sent Petitioner any Responding Briefs on all Appeals but the Direct Appeal to the Michigan Appeals Court when Petitioner had an Attorney.

XI. Complainant was supposed to have been a virgin when this alleged crime occurred. There was no medical evidence to her having any blood in her underwear and no medical testimony to her being a virgin.

XII. D.N.A. evidence showed that Petitioner's D.N.A. did not match the Foreign Head Hair, and was refused after a request to test the foreign head hair to complainant's Boyfriend.

### III.

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

5

>	(1)	resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>	(2)	resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 410-11.

Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision.  *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000).  This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented."  Id. at 943.  However, the independent review "is not a full, *de novo* review of the claims, but

remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA."  *Id.*

### IV.

### A.

Respondent argues that all of Petitioner's claims are procedurally defaulted.  The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*,

536 U.S. 947 (2002); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Respondent argues that all of Petitioner's claims fall into one of the following three categories of procedural default: (i) the alleged error was not preserved at trial; (ii) the claims were not presented on direct review; or (iii) the claims are unexhausted and no avenue for exhaustion remains in state court.

**B.**

First, Respondent argues that Petitioner's claim that the prosecutor committed

misconduct by arguing facts not in evidence regarding the source of a hair found on the victim (Claim VI) is procedurally defaulted because counsel failed to object to the prosecutor's conduct at trial.

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Michigan Court of Appeals, although finding that the claim was procedurally defaulted, considered the propriety of the prosecutor's conduct. The state court held that the prosecutor did not argue facts not in evidence regarding the source of the hair found on the victim. Instead, the prosecutor asked the jurors to draw reasonable inferences from the evidence presented. The prosecutor argued that, although the hair's source had not been identified, it

9

could have come from someone else who had been in the victim's home or from a source at the hospital. An expert testified that the typical person loses approximately a hundred hairs each day and that these hairs are deposited as a person walks or sits and may be transferred to other individuals in that way. The expert further testified that the hospital workers were not tested to rule them out as potential sources. Prosecutors are permitted to "forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). The Court agrees with the state court's conclusion that, given the trial testimony, the prosecutor's closing argument simply argued a reasonable inference based upon the evidence presented. Therefore, habeas relief is denied.

## C.

Respondent argues that the claims Petitioner presented for the first time in his motion for relief from judgment, Claims II through V, VII, and VIII, are procedurally defaulted. Respondent is correct that Claims II, III, and IV were first presented in Petitioner's motion for relief from judgment, and the Court will consider whether the state court enforced a procedural bar in denying these claims on collateral review. Contrary to Respondent's assertion, Claims V, VII, and VIII were not raised on collateral review. The Court therefore addresses procedural default as to those claims below.

"Whether a state court has actually enforced a procedural sanction depends on whether 'the last state court from which the petitioner sought review . . . invoked the stated procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims.'" *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *quoting Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004). Petitioner first properly raised claims II, III, and IV during state collateral proceedings. The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the

10

ground that Petitioner failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." In *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and in *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit held that this language invokes a state procedural rule, which is sufficient to preclude federal habeas review.

In contrast, in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), the Court of Appeals held that denials of leave to appeal by both Michigan appellate courts that were identical to those at issue in *Simpson* and *Borroughs*, did not invoke a state procedural rule sufficient to preclude federal habeas review. These seemingly inconsistent decisions can be resolved by considering the differences in the respective trial court decisions. In *Simpson* and *Burroughs*, the trial court did not address the merits of the petitioner's claims. In contrast, in *Abela*, the lower state court ruled on the merits of the petitioner's claims, but the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). The Sixth Circuit concluded that, under the circumstances, *Simpson* and *Burroughs* were inapplicable and the petitioner's claims were not procedurally defaulted. See *Abela* 380 F.3d at 922-24. In *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir.2007), cert. denied, __ U.S. __, 128 S. Ct. 1897 (2008), the Sixth Circuit resolved the differences between the *Simpson* and *Burroughs* cases and *Abela* by concluding that Ivory's case was more like *Simpson* and *Burroughs* than *Abela* because no state court addressed the merits of Ivory's claims during post-conviction proceedings.

The pending case presents a procedural history similar to that of *Ivory, Simpson,* and *Borroughs*. The trial court specifically invoked Michigan Court Rule 6.508(D)(3) in denying Petitioner's motion for relief from judgment. Mich. Ct. R. 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a

11

showing of cause and prejudice. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir. 2000), *citing Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998). Thus, the Court finds that the doctrine of procedural default is invoked.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse Petitioner's procedural default. Respondent also argues that this claim is procedurally barred. Appellate counsel cannot be expected to assert his or her own ineffectiveness on appeal. Therefore, the Sixth Circuit has held that an ineffective assistance of appellate counsel claim asserted at the first opportunity, on collateral review, is not defaulted. *See Whiting v. Burt*, 395 F.3d 602, 610 n.6 (6th Cir. 2005).

The Court now considers whether Petitioner's claims of ineffective assistance of appellate counsel excuse his default for these claims. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he

proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285. "'[O]nly when ignored issues are clearly

stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.2002)(quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)).

      The Court considers the merits of each of these procedurally defaulted claims to ascertain counsel's reasonableness in declining to raise them on appeal. Petitioner argues that the prosecution failed to present sufficient evidence to sustain his conviction because the physician's opinion that the victim had been sexually assaulted was not based upon information uniquely within the realm of his professional medical knowledge. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

      Under Michigan law, a person is guilty of committing criminal sexual conduct in the third degree if the perpetrator engages in sexual penetration with another person that the perpetrator knows or has reason to know was mentally incapable. *People v. Breck*, 230 Mich. App. 450, 451; 584 N.W.2d 602 (1998); M.C.L. 750.520d(1)(c). "Mentally incapable" means that a mental disease or defect caused the victim to be temporarily or permanently incapable of appraising the nature of his or her conduct. *Id.* at 451; M.C.L. 750.520a(f). This definition encompasses the victim's understanding of the physical act as well as the nonphysical factors, such as the moral quality of the act. *Id.* Considering the testimony adduced at trial, including testimony from the victim, her mother, and the school psychologist, Petitioner has not shown a reasonable probability that, had this issue been presented on appeal, he would have prevailed. Thus, he was not prejudiced by counsel's failure to raise it.

Next, Petitioner argues that counsel should have raised a claim challenging the scientific methods which formed the basis of the testimony from two prosecution witnesses, Dr. Steven Pearl and Nurse Gail Brush.  Petitioner claims that their testimony failed to satisfy the standards for admission of scientific evidence established in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).  Petitioner's reliance on *Daubert* is misplaced, because *Daubert* was concerned with the Federal Rules of Evidence, which are not relevant to Petitioner's state conviction. *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir.1998).  Moreover, Petitioner provides no basis for this Court to conclude that the admission of this testimony was improper under Michigan Rules of Evidence.  Therefore, appellate counsel was not unreasonable in failing to raise this claim on appeal.

Petitioner argues that counsel should have raised a claim of actual innocence.  Although Petitioner characterizes this claim as one of actual innocence, it is actually a claim that insufficient evidence was presented to sustain Petitioner's conviction.  As discussed above, based upon the evidence presented at trial, appellate counsel's failure to raise a sufficiency of the evidence claim on appeal did not deprive Petitioner of a reasonable probability of reversal. Likewise, counsel's failure to raise an actual innocence claim based upon the same arguments underlying Petitioner's insufficiency of the evidence claim, did not deprive Petitioner of a reasonable probability of success on appeal.

Thus, Petitioner has failed to establish cause to excuse his procedural default, and his claims are barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice.  *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.  *Id..* at 321.  Thus, Petitioner must assert a constitutional

error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence. In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after trial.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* (internal quotation omitted).

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, Petitioner's claims II, III, and IV are barred from consideration by procedural default.

**D.**

Finally, Respondent argues that Petitioner's final four claims (Claims IX through XII) are procedurally defaulted because they have not been exhausted in state court and no means for

16

exhausting them remains available to Petitioner. The Court *sua sponte* raises the question of procedural default argument with respect to Claims V, VII, and VIII. *See Elzy v. United States*, 205 F.3d 882 (6th Cir. 2000) (holding that court may *sua sponte* raise issue of procedural default).

A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A prisoner's "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Prather v. Reese*, 822 F.2d 1418, 1420 (holding that "[o]rdinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations"). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather*, 822 F.2d at 1420, n.3.

Petitioner failed to present claims V, and VII through XII to the Michigan Court of Appeals and Michigan Supreme Court. Thus, Petitioner has failed to exhaust his state court remedies with respect to these claims. However, no state court remedy is available to Petitioner because he already has filed one motion for relief from judgment in the state trial court and, pursuant to M.C.R. 6.502(G), he may not file a successive motion. Where a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition

17

should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). However, a petitioner will not be allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal.

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of these claims. However, ineffective assistance of trial and appellate counsel would not excuse Petitioner's failure to present these claims on collateral review in state court. *Hannah*, 49 F.3d at 1196. Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 321 (1995). As discussed above, Petitioner fails to make such a showing. Therefore, these claims are procedurally barred.

**V.**

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: May 6, 2009

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the petitioner and respondent.

s/Bernadette M. Thebolt
Case Manager
